## No. 27783

## The People of the State of Colorado v. Pipp Marshall Boyls

(591 P.2d 1315)

Decided March 12, 1979.        Opinion modified April 2, 1979.

J. D. MacFarlane, Attorney General, David W. Robbins, Deputy, Edward G. Donovan, Solicitor General, David K. Rees, Assistant, Edwin L. Felter, Jr., Assistant, for complainant.

Pipp Marshall Boyls, pro se.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

The Grievance Committee of this court, after a full disciplinary hearing, recommended that the respondent attorney, Pipp Marshall Boyls, be suspended from the practice of law for a period of two years and that he be assessed the cost of the disciplinary proceedings.

The recommendation of the Committee was based upon violations of DR3-101(A), DR5-105(A) and (B), DR5-107(A)(1) and DR7-104(A)(2) of our Code of Professional Responsibility, and upon conduct contrary to

the highest standards of honesty, justice and morality. The respondent argued that we should not consider the designated portions of the Code, except DR3-101(A), because they were not included in the complaint to the Grievance Committee filed by the Attorney General. The Attorney General concedes the point, but argues that the violations not pleaded were so minor that we should not reduce the two-year suspension.

■ DR3-101(A) reads: "A lawyer shall not aid a non-lawyer in the unauthorized practice of law."

We paraphrase the findings of the Committee. This court admitted the respondent to the practice of law in 1970. In 1973, he met James R. Walsh of Educational Scientific Publishers (ESP). ESP enrolled "students" who wanted to learn to set up "pure" trusts (also called "equity" trusts, "pure equity" trusts or "common law" trusts) which ESP claimed would reduce students' taxes materially.

ESP trusts allegedly would reduce or eliminate income, capital gains, estate and gift taxes provided they were operated or managed properly. ESP non-lawyer salesmen and the respondent were available to assist purchasers to formulate effective trusts.

Neither the Internal Revenue Service (IRS) nor any courts of record have found the trusts to be viable tax saving mechanisms. Since 1973, the IRS has publicized its opinion that "the entire ESP approach [is] little more than an ill-conceived scheme to improperly avoid taxes which would not accomplish any of its objectives." The publicity included letters sent from the IRS to all known holders of such trusts, a public news release and Revenue Rulings 75-257, through 75-260.

ESP "educators" marketed the trusts at presentations where they claimed: (1) that most bankers and lawyers were ignorant of their method; (2) that ESP retained attorneys with knowledge of, and experience with such trusts; and (3) that the "pure" trust forms were time-tested, copyrighted, patented by the federal government, court-declared and water tight.

One salesman testified that the respondent answered questions which the salesman relayed from clients regarding individual problems in setting up the trust, *e.g.,* whether or not to include certain real property or business assets in the trust. The respondent himself testified that he attended several sales presentations and prepared promotional materials which challenged the IRS' analysis as legally incorrect. ESP distributed these challenges in connection with its promotions.

■ In *People v. Schmitt,* 126 Colo. 546, 251 P.2d 915 (1952), this court held that the sale of trust programs similar to ESP's program constituted the unauthorized practice of law. The above testimony viewed in conjunction with the holding of *Schmitt, supra,* provides ample support for the Committee's conclusion that the respondent was abetting non-lawyers in the unauthorized practice of law.

Respondent's reliance upon *Grievance Committee v. Dacey,* 154 Conn. 129, 222 A.2d 339 (1966), appeal dismissed, 387 U.S. 938 (1967) is unavailing. The case is distinguishable since Dacey did not participate in tailoring his standardized forms to an individual's needs. We likewise find the respondent's claim that ESP employees were merely acting as non-lawyer counsellors is untenable in view of *Schmitt, supra.*

We have reviewed the length of suspension recommended by the Committee and have concluded to set the length of the suspension at one year. The respondent is suspended for one year commencing forthwith and assessed the costs of these proceedings in the amount of $952.64 to be paid within 90 days.