**The PEOPLE of the State of Colorado, Complainant,**

v.

**Michael M. LADEN, Attorney– Respondent.**

**No. 95SA96.**

Supreme Court of Colorado, En Banc.

April 17, 1995.

Linda Donnelly, Disciplinary Counsel, James S. Sudler, Asst. Disciplinary Counsel, Denver, for complainant.

Cooper & Clough, P.C., Paul D. Cooper, Denver, for attorney-respondent.

PER CURIAM.

The respondent[1] in this lawyer discipline case was charged with aiding nonlawyers in the practice of law by assisting the nonlawyers in selling "living trust" document packages to customers in Colorado. The respondent and the assistant disciplinary counsel entered into a stipulation, agreement, and conditional admission of misconduct, C.R.C.P. 241.18, which recommended the imposition of a public censure. An inquiry panel of the Supreme Court Grievance Committee approved the conditional admission, including the recommendation of a public censure. We accept the conditional admission and the inquiry panel's recommendation.

I

The conditional admission states that in August 1992, a couple complained to the Attorney General's Office that a nonlawyer had sold them a living trust. The form of the trust was prepared by an out-of-state lawyer on behalf of National Family Trust, which was headquartered in California. According to the conditional admission, National Family Trust was basically operated by nonlawyers who prepared the couple's trust for $1,595. The nonlawyer who sold the trust told the couple that it would cost their sons $65,000 to settle their estate through probate and the courts.

---

1. The respondent was admitted to the bar of this court on April 7, 1966, is registered as an attorney upon the official records of this court, and is accordingly subject to the jurisdiction of this court and its grievance committee in these proceedings. C.R.C.P. 241.1(b).

The nonlawyer told the couple that the respondent, for a fee of $125, would review the living trust and be available for a thirty-minute consultation to discuss the concept of the living trust, including whether their arrangement with National Family Trust was to their advantage. The nonlawyer also advised the couple they were not obligated to use the respondent's services. The couple mailed a check for $125 to the respondent, who sent them a three-and-a-half page letter based on a form supplied by National Family Trust. The respondent reviewed the form for accuracy and truth when he agreed to accept referrals from National Family Trust.

The letter the respondent sent to the couple was essentially identical to letters that he sent to other persons referred to him by National Family Trust. In 1992 and 1993, the respondent reviewed trust documents for twenty to twenty-five National Family Trust customers, and each customer paid him $125 for the review. Four or five purchasers called the respondent with questions. The letters to the trust purchasers each stated, "[W]e have specifically not reviewed or discussed with you any alternative estate planning techniques."

When the respondent learned that National Family Trust was giving excessively high estimates for the cost of probate, he told one of National Family Trust's representatives that probate costs in Colorado were not that high, and that he advised his clients, such as the couple referred to above, that probate costs were not as much as the National Family Trust estimates.

The respondent has stipulated that his conduct outlined above violated DR 3–101(A) (a lawyer shall not aid a nonlawyer in the unauthorized practice of law).

## II

"The counseling and sale of living trusts by nonlawyers constitutes the unauthorized practice of law." *People v. Volk,* 805 P.2d 1116, 1118 (Colo.1991). *People v. Cassidy,* 884 P.2d 309, 311 (Colo.1994). *See also Florida Bar Re Advisory Opinion—Nonlawyer Preparation of Living Trusts,* 613 So.2d 426, 427–28 (Fla.1992) (assembly, drafting, execu-tion, and funding of living trust is the practice of law, as is the determination of the need for a living trust and appropriate type of such trust); *Committee on Professional Ethics and Conduct of the Iowa Bar Ass'n v. Baker,* 492 N.W.2d 695, 703 (Iowa 1992) ("[W]hether a living trust is appropriate in a given case calls for the exercise of independent professional judgment by a lawyer.").

By agreeing to accept referrals from a nonlawyer engaged in the unauthorized practice of law under the circumstances here, the respondent aided that nonlawyer in the unauthorized practice of law, contrary to DR 3–101(A). *Cassidy,* 884 P.2d at 311; *People v. Macy,* 789 P.2d 188, 189 (Colo.1990); *People v. Boyls,* 197 Colo. 242, 243, 591 P.2d 1315, 1316 (1979).

## III

The inquiry panel approved the conditional admission, and recommended that the respondent receive a public censure. Under the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991 & 1992 Supp.) (ABA *Standards* ), absent aggravating or mitigating circumstances, "[s]uspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system." ABA *Standards* 7.2. *See Cassidy,* 884 P.2d at 312.

The assistant disciplinary counsel points out that we publicly censured the lawyer-respondent in *Volk,* 805 P.2d at 1119, for aiding a nonlawyer in the unauthorized practice of law. He asserts that the facts in this case more closely parallel the facts of *Volk* than the facts of *Cassidy, Macy,* or *Boyls,* which were cases in which the lawyer-respondents were suspended. We agree, although the respondent in this case received two letters of admonition in 1974, another in 1987, and a private censure in 1978 for unrelated misconduct. ABA *Standards* 9.22(a) (prior discipline is an aggravating factor). In mitigation, the assistant disciplinary counsel has stipulated that the respondent has cooperated fully in these proceedings, *id.* at 9.32(e), and that the respondent ceased accepting referrals from National Family Trust when

he became satisfied that his activities were ethically improper. Considering the nature of the misconduct as well as the factors in mitigation and prior discipline, we conclude that a public censure is appropriate. One member of the court, however, considers a public censure to be inappropriately lenient based on the stipulated facts and the aggravating and mitigating factors present. That member would reject the conditional admission and return the matter to the grievance committee for further proceedings. *See* C.R.C.P. 241.18(a), (d).

### IV

It is hereby ordered that Michael M. Laden be publicly censured. It is further ordered that the respondent pay costs in the amount of $50.80 within thirty days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920–S, Denver, Colorado 80202.